Case number 21-5243, Giorgi Rtskhiladze v. Robert S. Mueller, III, Special Counsel for the Investigation into Russian Interference in the 2016 Presidential Election and United States Department of Justice. Mr. Madden for the appearance, Mr. Genda for the appellees. Good morning, Counsel. Good morning, Your Honor. Mr. Madden, please proceed when you're ready. With respect to Article 3 standing, the Court initially held that Mr. Rtskhiladze had plausibly pled that the implications of Footnote 112 caused him business and reputational harm. But then it turned around and said the Senate report, which was issued 15 months later, constituted an independent injury, and therefore, for prospective relief, the harm from Footnote was no longer traceable. And for damages, he couldn't recover damages after the release of the Senate report. The Senate report did not harm Mr. Rtskhiladze. There's no defamation in the Senate report. In fact, Mr. Rtskhiladze uses the Senate report to show how the implications of Footnote 112 were so defamatory. Also, this was not an argument that DOJ made for the district court. This is something the court on its own came up with. There wasn't any briefing on the issue, and so it was surprising. For the Senate report to constitute defamation by implication, it would have had to state that he was a Russian businessman, which he did not, that he had personal knowledge, implied that he had personal knowledge about these tapes, which he did not, and that he took active steps to suppress those tapes before the election, which he did not. The Senate report does no such thing. It, first of all, includes the full text, which Footnote 112 did not do, and the context of the full text takes the implications of defamation away. For example, Footnote leaves out Mr. Rtskhiladze saying, not sure of the content, a person in Moscow bragging about tapes, not sure it's no big deal. That's in the Senate report. That is not in Footnote 112. The Senate report shows the context that all Mr. Rtskhiladze had was a phone call from a friend to him in Connecticut saying that his friend was at dinner and overheard somebody talking about tapes. That's the only knowledge he had, and he took no action. He had no personal knowledge, the Senate report says. He took no action. In respect to the Krokus group, which gets mentioned in Footnote, the Senate report shows that that was something that was made after the Steele dossier came out, which wasn't out at the time of the tax return of the election. And so he just said, well, I told him there was something there, and that's all. It's in the Senate report, so it's not defamatory. The independent harm argument is illogical. It's like saying the New York Times defamed my client, but the Washington Post 15 months later defamed my client, and therefore you have to dismiss the case against the New York Times. That's just not plausible. Can I ask you about your desire for access to the transcript? Yes. I think that Judge Cooper reviewed the transcript when he denied reconsideration. Is that correct? Yes, sir. So if that's the case, why is your desire for the transcript, why is that claim not moot? The claim is moot because this case is like any other case the District District District Circuit has addressed. This is a case where the Department of Justice itself put into the public forum in a highly media feeding frenzy part of the transcript. And when it did that, it misquoted the transcript, and it left out material parts. And so DOJ's arguments about policy, they have been waived. Why do you want the transcript? The transcript, like the Senate report, gives the full context of what Mr. Scalazza knew. If you can't get that from footnote 112, in fact, it defames my implication, but the transcript as a whole does not. And that's why we think it's only fair to release the transcript to Mr. Scalazza. The Mueller investigation is over. And there's I mean, this footnote destroyed my client's livelihood. All he wants is to be able to go to the public forum and say, look, this is what I actually said. That's all that issue. The whole point of getting the transcript is to disclose it. Yes, sir. That report is also irrelevant to a statutory cause of action, which we have here under the Privacy Act. And it's supposed to go to the court. Say we agree with you that your client had standing on these equitable relief claims. Can you address whether you've even stated a claim for equitable relief under the APA or under the Privacy Act? There are some hurdles there in terms of whether there was a final action under the APA and whether this was, I guess, a group of records under the Privacy Act. Yes. Under 552A-G1A, if a person makes a request for amendment and is denied, the person is entitled to sue in court if it's in a system of records. And DOJ argues that it's not in a system of records. But that is a system of records in the Privacy Act.  Okay, so all it has to be is something that the agency uses to acquire information about a person by some identifier. And this is not 1974 when the Privacy Act was enacted. And so it just stretches credulity for DOJ to argue that this is not in a system of records because I'm sure… By the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. Correct, Your Honor. What's the Mueller report? If there were a FOIA request for this information, DOJ would not go through page by page. I'm certain they have a model program that goes through, picks out the name, picks out any information you want on the individual. They don't go through this page by page. This is 1974. Technology has come a long way. And particularly, this court has said, when it's a formal investigation, the interests of the Privacy Act are at their highest. In any case, if this court doesn't agree with us on that, he's entitled to relief under the APA. Now, the violation of 552 G1C says the agency must keep records that are accurate and complete so that there's no adverse determination. But there has to be a final agency action. Yes, Your Honor. DOJ argues that the final agency action is the Mueller report. But that's not what we're arguing. We're arguing that the decision by the Attorney General who would announce that any information about a non-target that would be harmful would be redacted. It wasn't. And that's the final agency decision. He used his discretion under CFR 28-600 to do that. So, now it's true that in the APA case, under that section, there's no de novo review, as there is for 552 A, failure to amend. It's abuse of discretion standard. But there's nothing in 552 AG that says there's no equitable jurisdiction over a violation of C. It says if there's a violation of C, the district court shall have a jurisdiction. Can I go back to the grand jury materials, the access to the transcript, just for a second? So, if I'm understanding your argument, you only want the transcript so that you can disclose it, so that your client can disclose it to correct the record in the eyes of the public.  So, does that mean that there's no independent interest in actually having the transcript itself, as opposed to being able to go in and look at the transcript? I mean, in some other cases, for example, somebody may want the actual transcript so that they can refresh their memory, and they want to make sure that they have it right. And then the question comes up, well, you can go in and take notes. What's the difference between taking notes on it and actually getting the physical transcript itself? Because I understand your argument. You don't care about actually having your hands on the transcript unless it can be disclosed. That's right. We have looked at the transcript. We have taken notes. We filed a declaration on that. But our argument is when the government itself discloses part of the transcript and defames the non-target, the target is entitled to have the transcript to protect themselves. I mean, in other words, one way to think about this, we have our In Re Grand Jury case in which we talked about access to the transcript so that the witness can go in and look at the transcript. And then we specifically carved out whether the opportunity to go in and look at the transcript also means that you actually get a physical copy of the transcript. We weren't even talking about disclosure of anything, the notes or the transcript itself. But here, you're not worried about that distinction because it doesn't do you any good to get the transcript itself unless you can actually disclose it. That's right. Yes, sir. May I touch on the damages claim under the privacy act? Can I ask, though, is that preserved? Because it was not my understanding that you had asked the district court for access to the transcript so you could disclose it. Yes, we did specifically ask that the transcript be produced without restriction. Can you point us to where you did that? And I know it might be hard to name it off the top of your head, but maybe in your rebuttal. I can try to find it. If I can't, I'll send it to H-E-20-H-A immediately. We did request the transcript itself unrestricted. It was denied by the district. I think the question is, you requested the transcript so that you could disclose it. Yes, we requested an unrestricted copy of the transcript. That's what you said. You made that argument. Yes, sir. We certainly did. If I may just touch on the damages claim. The court went on and said, even though there's Article 3 jurisdiction for this damages claim under the privacy act, that my client hadn't plausibly pled that the defamation was willful or intentional. And when it did that, it applied a different standard than it did for standing. For standing, it looked at the footnote as a whole. It said, yes, I agree. The implications of this footnote are defamatory. On the damages issue, it said, no, it looked at the center reports just sort of almost the same. That's not what we're arguing. Once you show, and the court agreed, that there is defamation by implication, in that kind of a case, intent is presumed. So dismissing the case on the pleadings as a matter of law was improper. Even true statements can be defamatory by implication. And intent is irrelevant to those cases. And of course, you don't even need to prove actual intent in a privacy act case. It's just a little more than gross negligence or reckless disregard. So the court applied two standards for looking at the intentional willful part of the Privacy Act, which is clearly wrong based on our theory of the case. And of course, the record shows there is a clear conflict of interest with the chief prosecutor in this case. She did not tell Mr. Mueller about her connection to Hillary Clinton. And she certainly had control of the pen. And she had motive and opportunity to do what footnote 112 did for political reasons. And my client was caught in the crossfire. Thank you, counsel. We'll hear from the, unless my colleagues have other questions, we'll hear from the government now. Mr. Janda. Thank you, your honor. And may it please the court. Sean Janda for the federal government. I'm happy to address whatever questions the court might have. But in the absence of more specific direction, I think it might be most natural to start with standing. And to do that, I think it's helpful to sort of take a step back and really focus in on the statements that the plaintiff here claims are defamatory or inaccurate. And the ones that he isn't challenging, even in the Mueller report itself. And so, you know, the plaintiff, I think, has not disputed that he was in communication with Michael Cohen in 2015 and 2016 before the election. There was communication about building a potential Trump Tower project in Moscow that Michael Cohen contacted plaintiff because plaintiff had experience with business ventures in Moscow. That he discussed with Michael Cohen the possibility of a meeting between Mr. Trump and the highest level of the Russian government. That he suggested to Michael Cohen that they send a letter to the mayor of Moscow and sort of intimated that the mayor of Moscow knew about the project and would support it. And he doesn't dispute that he, in fact, was texting with Michael Cohen in October 2016 about the rumors of these tapes. And so I think against that extremely large amount of concededly true and non-defamatory information in the Mueller report, it's just really hard to believe that these specific alleged inaccuracies or the asserted defamatory implications of the footnote have caused the plaintiff any concrete reputational injury. And I don't think that there's anything in the complaint or in the declaration that was filed in district court that really does the work of homing in on the specific distinction between the alleged defamatory statements and all of the other statements and demonstrating which has caused… Are you focusing on the idea? It seems to me you could be making two arguments here. Maybe you're making both. But one of them is, look, don't worry about the stuff that the plaintiff is focused on because there's other stuff that corrects any misimpression. So, this is kind of trivial because anybody who reads the entire Mueller report will see that on page one it says X, on page 994 it says Y. And if you put the two of them together, you'll see that the correct information is actually in there. That's one way to look at it. The other way to look at it is to say that the thing that you're focused on actually isn't all that big a deal, period, because it's just little subtle distinctions like the addition of the word some and having Russian or not Russian in there itself is not a big deal, regardless of corrective information that's elsewhere. Are you focusing on the fact that there's the correct information somewhere else, or are you focusing on the fact that actually this isn't all that big of a deal? So, I think there's a little bit of the first one, particularly with the U.S.-based executive of a Georgian company description versus the Russian businessman description. I think that the first one is accurate and is in the Mueller report. But more fundamentally, it's the second. And I think there's just a lot of information in the report. And so, as I understand the plaintiff's theory, it's kind of a time-based theory that after the report came out, he lost various business opportunities or other opportunities. And because there's so much true information in the report, I think that sort of time-based theory doesn't get him home. I think he has to demonstrate that it's the stuff that he's actually challenging in the report. Yeah, I mean, that seems like tailor-made stuff to win on causation on the merits. He's just not suffered any damages. And actually, if you look at it, it's really hard to believe that you can construct a theory by which that he can make out a claim for relief because there's so many other intervening causes and there's so many other things that factor into it. At standing, it seems like asking a lot to say there's some stuff that the district court thought was actually problematic in theory, at least at the motion to dismiss stage, because it's plausible. And then to say, yeah, but then there's other stuff elsewhere in this report and then other stuff elsewhere out in the world that actually if somebody was omniscient and read everything in the world, they would realize that this isn't that much of a big deal. It seems like asking a lot at the standing stage on a motion to dismiss. I don't think so, Your Honor. I mean, I would point the court to EZL trucking, which is one of the sorts of cases that we cite in our briefs, which makes clear that to really make out a concrete injury at the standing stage in this reputational injury context, you do need to at least have kind of the plausible facts that would give rise to those allegations or to the conclusion that you are harmed by the thing that you're challenging. And it might be that there are facts that the plaintiff could have alleged that he hasn't. But I think just like any other plaintiff, it is the plaintiff's burden to come in and allege the relevant facts to get home, even on the standing piece. I mean, they might also be very good causation arguments if you get past standing, but certainly I don't think you can skip over the standing analysis on the basis that it's just sort of hard for the plaintiff to do the work that the plaintiff has to do to make outstanding. And then, you know, I think the other piece of it is that even if you assume that there was some injury, in fact, some number of years ago when the Mueller report was released, as this report found, it's sort of hard to understand how that would be addressable by a judgment today. When you have the intervening Senate report, which contains a lot of discussion about the plaintiff, and I think I searched the relevant volume and his name appears in it more than 100 times. There are very extended discussions of contacts with Russia, contacts with Michael Cohen, of the text message exchange that's referenced in footnote 112. And I'm not entirely sure what the plaintiff's sort of specific theory of addressability is, but it's hard to understand how a judgment, particularly when he could sort of distribute the Senate report to business contacts if he thinks that they're refusing to do business with him because of misimpressions created by the Mueller report that would be corrected by the Senate report. But might there be people who might be aware of the report and haven't read the Senate report? You know, that might be possible. I have no idea. Yeah, that's standing. I don't think so. I mean, people who the relevant people, I think, would be people who have read or are aware of the Mueller report. Don't know anything about the same report. It's highly speculative. I think I think anybody who might have read the Mueller report and wasn't aware of the Senate report. If you can see that he had standing just based on the Mueller report before the Senate report came out, there'd still be standing. It's any injury. So, I don't think so. You're right. And one is there's the injury piece, which we are contesting, but then the disability piece is it's not just people who read the Mueller report, but haven't read the Senate report. It's people in that category that would then be aware of the judgment and would sort of revise their impression or conduct in some way on the basis of this court's judgment. And I don't think the plaintiff has demonstrated that there is sort of some group of people out there that would be aware of the report and the judgment, but not the Senate report. So, that would be true. Let's just assume that there's just a blasphemously defamatory document out there. And everybody agrees that it's totally false and it's totally defamatory. And then a couple of years later, a second document comes along that has a different rendition that corrects the record. There's no action as you only have standing to dispute the first one. I mean, I think this doesn't come up that often, Your Honor. I mean, usually defamation is litigated in state court for damages where the addressability question just isn't really live. But I think we're not asking the court to adopt any sort of bright-line rule or broad principle. I mean, I think the legal rule is given by, for example, this court's decision in renal physicians, which is that to show addressability, it's the plaintiff's burden to plausibly allege the facts. That could lead to the plausible conclusion that the third parties will change the way that they are interacting with the plaintiff or will stop injuring the plaintiff on the basis of the judgment. And I think just in this very fact-specific context, the plaintiff hasn't done the work to make that demonstration. Can I ask you about the second action before Chief Judge Howell, unless you had more questions on the first? Well, I just had one question. If we disagree with you on this standing issue, do we have to remand to the district court, or can we just hold that there's a failure to state a claim on those issues? I think the court certainly can hold that there's a failure to state a claim. I mean, the district court actually dismissed the Privacy Act damages action on the merits, and this court certainly could affirm that. For the equitable stuff, I think we didn't ask the court to amend the judgment in any way. I think we're fine with the dismissal without prejudice, and it would be fine for this court to affirm the dismissal without prejudice on the alternative merits grounds that we presented, and I think are fully briefed before this court. I know we can, but I guess the question is, should we? You know, I don't think those are pure questions of law. The question about the final agency action question and the question about the system of records. I don't know that any further development in the district court would be helpful or useful in any way, and so certainly if this court thinks that we're right on those threshold issues, we presented them to the district court. The district court didn't feel the need to reach them because it agreed with us on standing, but I think they're fully aired for this court's decision. But I hadn't thought completely about the without prejudice with prejudice, actually. So if the dismissal is without prejudice, if the merits are reached, is it not a dismissal with prejudice? So if the district court had reached the merits, we have dismissed with prejudice, but my understanding is that it is appropriate for the court of appeals to affirm the dismissal without prejudice, even on merits grounds. I mean, we're not asking to amend or correct the judgment in any way, and certainly sometimes you would have a dismissal without prejudice, even on merits ground if you were giving leave to amend or something of that nature. So I don't think there's any problematic thing about this court affirming on the grounds that we present. But let's say we do exactly that. We affirm the district court. What judge from Judge Cooper's judgment. Does that make Chief Judge house case moot? So I'm not sure they would make it moot. Your honor. I think it would change the analysis. I mean, to the extent that he the plaintiff is getting in to rule 60 under the exception for sort of disclosure and connection with another pending proceeding or another civil proceeding. It certainly would change the analysis if there's no pending proceeding. I would think you would get under that. But I can I can. Why wouldn't it be moot then? I mean, I get 1 hour. 1 argument would be that. If that's true, let's suppose that the transcript actually helps bolster some of the merits claims, including on the privacy act, because it can show the requisite degree of intentionality or something like that. And in that situation, getting the transcript actually would make a difference. So, I think Judge Walker's question to be, if the dismissal of the civil action is affirmed. So, so there is no more civil action where the transcript could help on the merits at that point. Then there's still the pending request. I mean, you can make an unmeritorious request or request that doesn't comply with 60. And so I'm not sure that that would be moot. I think, were that all to happen and where this court not to just affirm Chief Judge House decision. I don't even I don't understand why it's not moot actually either way, regardless of what we do in action 1, his, I think his motion in action 2 before Chief Judge. How about accessing the grand jury transcript his motion was titled. He wants an order. He wants an order denying unrestricted access to the grand jury transcript or alternatively, an order for the Department of Justice be directed to file the transcript under seal and the related case, and he got the alternative relief. So what's left. So, I think we have understood the request to be, I mean, primarily a request for unrestricted access. So, so we can get a copy of the transcript. So we can disclose copy of the transcript. That's like, he said, I'll take either. I mean, maybe, and I think a lot of the arguments he's now making in this court now, the transcript has been filed about sort of correcting the public record and sort of correcting whatever misimpression he thinks was left by the report weren't really aired in the district court. But we have understood Judge House, then Chief Judge House opinion as at least denying in some part of relief that he was requesting. If this court thinks it's not going to fight you too hard on that, but it's not certainly how we have been thinking about the issue. And I think on the merits, again, is quite easy for this court to affirm on the merits. There was really no articulated justification in front of to judge how to support the need for unrestricted access, particularly in light of the ability to have taken notes and disclosed the notes and the impressions of the transcript in connection with the civil action. Can I ask, would it would it not be until the period for rehearing or for seeking cert expired? I mean, maybe it's certainly it will be challenging at that point to even at this point, right? To put additional information into the record. If that's kind of the hook for the liveness of the claim. But I think to me, that's the merits issue. I mean, it's a sort of question about whether one of the rule 60 prerequisites disclosure is satisfied, then sort of opens the door for the district court to permit disclosure. I don't think it's a jurisdictional issue. I mean, if someone came into court said, you know, I just really want a copy of my transcript. There's no pending civil proceeding, but I want a copy. I don't think we would say that's sort of a case. It was just going to fail on the merits because we'll succeed provides sort of the full set of circumstances in which the district court voluntarily dismisses the underlying action. I mean, I think as long as the plaintiff sort of keeps the request in front of the district court, then I'm just not sure it's a mootness problem. I mean, if this court disagrees, like, we are perfectly happy, I think, for this court to say that it's moved at this point, but it's not how we've been thinking about it. Even if they dismissed it, then you think they could still take an appeal of the request for access to the transcript that is to be used in the action that they dismissed? I mean, I think they could take the appeal. You know, if the court thought that the original denial was on its own terms and abuse of discretion, then maybe the court would send it back and the district court then in reevaluating the request would take account of the change circumstances and say, well, now, if there's no civil action pending, you have no need for the transcript or will succeed not satisfied. But I don't necessarily think that would move the appeal. Can I ask one question about the merits of the will succeed question? So if if we're in a situation in which there's an entitlement to look at the transcript and to take notes and to basically transcribe the transcript by taking notes, then can I can I just hear your articulation of what the additional interest is and not disclosing the transcript itself? So I think there's a couple of things there. And so I think sort of number one, and maybe the most important one is the one that was sort of articulated by Justice Brennan in dissent in the John Doe case, and then was sort of picked up by this court and grand jury, which is that actually coming out with an official copy of the transcript and having the automatic right to that copy of the transcript does provide an opportunity for any individual that might have control over a witness to force the witness to come out with a copy of the transcript, check the witness's testimony to see what the witness said in a way that might well chill sort of free and candid testimony on the front end. So that person could still force disclosure of the notes if they have access to the transcript, look at, take the notes. And I take it in that situation. At least the person can protect themselves because they don't have to turn over actual notes. They can make up some other notes. I mean, there's there's at least a Delta, at least some Delta there. And I'm not sure even that you have to be able to disclose the notes. I mean, here, the district court imposed restrictions on. But if it's a pressure situation, then the whole thing is about disclosure, because if it's a third party who says, hey, go in and figure out what they're going to let me know, then we're just we're just assuming a circumstance in which that might come to pass. Right. But I think the district court could well say, you know, you have no access to the transcript. You can take your notes. But I'm going to tell you, you can't disclose them to anyone. And then that wouldn't sort of cut off the potential pressure, even setting aside the ability to find notes or whatever that might exist there. And does that argument does if we rely on Justice Brennan's notion, is that just something that's going to work in every case? So there's just a presumptive disentitlement to the transcript. And the government doesn't even for a witness doesn't have to come forward with a specific justification as to why there shouldn't be disclosure of the transcript itself to the witness. I think probably, but that's just what rule 60 is. I mean, there's a strong bias in favor of grand jury secrecy and grand jury sort of grand jury carves out that specific circumstance where the witness gets access. But I think as a general rule, any because of the witness. Right. So we're already we're in a land in which it's flipped a little bit because the person is actually the witness, and they could go out on the courthouse steps and announce everything that just happened. Right. So I think the court, this court has carved out sort of an exception to the usual rules. But I'm not that that means that sort of the exception should expand and expand to swallow the usual rules. And the usual rules here are very strongly biased in favor of secrecy. And, you know, I think, as we explain the briefs, there is a pretty significant delta between the witness being able to just sort of say, here are the kinds of things I talked about. And the witness being able to obtain a copy and to show sort of here are the exact questions that were asked. Here's exactly what I said. There may well be sort of other individuals who could understand from the transcript things that the witness themselves might not understand. There's always sort of the veneer of not being entirely sure how truthful or accurate recollection of the witness is. And all of those just go away when you have a copy of the transcript. Okay. My colleagues don't have additional questions for you. Thank you. Thank you. We'll give you two minutes for a rebuttal. With respect to the assertions, hard to believe there were damages. That's premature, first of all. And secondly, Mr. Scalise has filed a declaration showing how he was damaged in that case. With respect to this, I can't believe it's really hard. All you have to do is look at Rachel Maddow's transcript. From three to a couple of days after the footnote was made public, it said, so that means Trump knew that somewhere in the former Soviet Union, a business buddy of his had taken action to make sure tapes, supposedly from Trump's trip to Russia, those tapes weren't getting out. Don't worry. All taken care of. I took care of that for you. Right. There's the damage. That was a feeding frenzy worldwide on that issue. The failure to state a claim, just to reiterate, we believe they're standing under for echo relief under the Privacy Act, damages under the Privacy Act and under the APA. You're on the question of whether we asked directly for the transcript to be made public. I know we did. I cannot find it. I will submit it. I want to be clear about what my question is. My question for you is, though, it's I'll assume that you asked for the transcript with the authority to make it. I'll assume you asked for an access, unrestricted access. But I'm wondering if made the argument we need unrestricted access to the transcript so that we can disclose it to the public. Yes, your honor. I'm certain we did. I will find that for you. I will submit 28-A either this afternoon or tomorrow morning. On the policy issue of disclosure, as the court has said, the testimony belongs to the witness. That's the first rule in this idea of policy. Well, if you get the transcript out, there's going to control the witness. That is not applicable in this case. Miller investigation is long, long gone. So we ask that this case be remanded and sent back to the district court with instructions from this court. Thank you, your honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Walker, Pan